### Lonnie Reeves v. The State.

#### No. 7193.   Decided June 20, 1923.

**1.—Murder—Requested Charges—Practice on Appeal.**

Where, upon trial of murder, it appear upon appeal from a conviction thereof, that no exception was reserved to the failure of the court or its refusal to give requested charges, and moreover the same principles were included in the general charge, there was no reversible error.

2.—Same—Sufficiency of the Evidence.

Where it appeared from the record on appeal that appellant received a fair trial, and the evidence sustained the conviction under a proper charge of the court, the judgment of a life sentence must be affirmed.

3.—Same—Bills of Exception—Rule Stated.

It appears well settled that exceptions to evidence admitted over objection of defendant may be embraced in the statement of facts, and such exceptions will be considered under certain limitations and restrictions.

4.—Same—Evidence—Opinion of Witness—Harmless Error.

Where a witness's opinion was objected to on the ground that the witness had not shown himself to be an expert nor qualified to give such an opinion, and that he was not a practicing physician, and this was shown to be true, his opinion should not have been admitted. However, where this testimony was supplied without objection from another source, the same is harmless error.

5.—Same—Bill of Exceptions—Rule Stated.

Where there is nothing in the bill of exceptions which enables this court to pass upon the correctness or otherwise of the objections urged, it does not feel bound to examine the entire statement of facts whether they afterwards developed.

6.—Same—Evidence—Moral Turpitude—Judgment of Conviction.

Where the inquiry was not for the purpose of disqualifying the witness, but only as affecting the credibility it is not necessary to produce the judgment of conviction that the witness had been convicted of robbery; nor was the conviction too remote after three years. Following Vick v. State, 71 Texas Crim. Rep., 50, and other cases.

7.—Same—Evidence—Impeaching Witness.

Where defendant complained that he was not permitted to ask a State witness if he had not been indicted in seven cases in 1910, charging him with passing forged checks, and if the indictments were not dismissed in 1912, but the record showed that the proof of such indictments went into the record, there is no reversible error.

Appeal from the Criminal Court of Dallas. Tried below before the Honorable Robt. B. Seay.

Appeal from a conviction of murder; penalty, ninety-nine years imprisonment in the penitentiary.

The opinion states the case.

*Ballowe & King*, for appellant.—On question of bills of exception in record, Cox v. State, 132 S. W. Rep., 125; Bailey v. State, 97 id., 694.

*W. A. Keeling*, Attorney General, and *C. L. Stone*, Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Appellant was convicted for the murder of Turner Gamble and his punishment assessed at confinement in the penitentiary for ninety-nine years.

. Appellant lived on Fairmount Street in the city of Dallas. His brother, Walter Reeves, lived on the same street near appellant. Diagonally across the street lived Bessie Brown, her husband Will Brown, and her brother Dick Gamble. The deceased, Turner Gamble, did not live with them but on the afternoon of the homicide was visiting at their house. We conclude from the testimony that appellant had no acquaintance whatever with deceased. The relations between the two Reeves boys, the Browns and Dick Gamble appeared to have been friendly up to a few days prior to the killing. We gather from the record that about this time there was some talk in the neighborhood that appellant was manufacturing and selling intoxicating liquor at his house, and the officers made some investigation. Appellant seems to have attributed the inquiry of the officers and the rumors to Dick Gamble. The evidence of the State is to the effect that on the afternoon the killing occurred appellant called Dick Gamble out of his sister's residence to talk with him; that they went about half a block away where they were seen to be engaged in conversation; that in a few minutes Dick Gamble returned to his sister's house in an excited condition, stating that appellant had made an assault upon him and had tried to strike him with a picket which he had pulled off the fence, and made inquiry if anyone in the house had a pistol, and was advised there was no pistol on the premises. Within fifteen or twenty minutes thereafter appellant and his brother, Walter Reeves, were seen crossing the street in a run going towards the Brown house. They each had pistols in their hands, and one witness states that she heard Walter Reeves, who was behind appellant, say to him, "Hide your pistol;" that appellant replied, "G—d damn them, I am going to kill every G—d damn one of them." They reached the Brown house and broke in the back door which was bolted. The occupants of the house testify that when they broke in the back door appellant said, "Come out of there you s—s of b—es, I am going to kill every G—d damn one of you;" that Will Brown, Bessie Brown, Dick Gamble, Turner Gamble and another negro by the name of Shelton, who was present at the time got hold of the Reeves boys and undertook to disarm them; that during the scuffle furniture was overturned, dishes broken and considerable noise and confusion occurred; that finally appellant broke loose from those who were trying to disarm him, with the exception of Turner Gamble who was an old negro seventy years of age; that he still had hold of appellant and appellant hold of him; that as appellant backed out of the door through which he had entered, that deceased was saying to him, "Don't do that, don't do that, what is the matter with you boys?"; that appellant pulled him out of the back door, saying "You old gray headed s— of a b—, I will drag you out in the yard and kill you;" that they scuffled out into the yard against a box and that during the struggle the pistol in the

hands of appellant was discharged several times; that Walter Reeves had gotten away from the parties who had been trying to disarm him, ran out of the front door and around to where appellant and Turner Gamble were, and that Walter Reeves also shot deceased. During the fight appellant received a pistol shot wound in the leg just above the knee. Deceased had five pistol wounds in various parts of his body and died immediately after walking back into the house.

. Appellant's evidence and that of his witnesses was to the effect that on Friday night before the killing Sunday afternoon, Dick Gamble had been at appellant's house and had caused a disturbance in a quarrel with a negro named Clem; that appellant had requested him not to have any trouble there and had sent a negro woman to notify Bessie Brown, Dick's sister, that he was there and for her to come after him; that Will Brown had come and taken Dick Gamble away; that as they were leaving one of the two was heard to say, "G—d damn them, don't go over there to that nigger, Lonnie Reeves' house and start anything, We'll get the s— of a b— over at our house and we'll do business with him there;" that appellant and his brother, Walter Reeves, were passing the Brown house the Sunday afternoon when Bessie Brown called appellant to come into the house, that she wanted to talk to him, and that he and Walter Reeves upon that invitation went in, entering at the front door; that immediately upon getting into the house Dick Gamble said, "There is that s— of a b— now," and that immediately the parties in the house, including deceased, made an attack upon both appellant and his brother; that several shots were fired in the house, and that appellant scuffled out of the back door, deceased holding him at the time and striking him about the head with an iron bar or stick of wood; that as they were scuffling out in the yard some one from the inside of the house fired two shots at appellant, which shots apparently struck deceased; that he turned appellant loose, who immediately ran away. Will Brown and Dick Gamble each denied that either of them used any such language as was attributed to them at the time they left appellant's house on Friday night. Will Brown testifies that he went to appellant's house after Dick Gamble on such occasion at the request of his wife but that he knew of no trouble which had occurred there, and that there was no indication of any trouble at the time he reached appellant's place. Search was made by the officers and other parties after the homicide and no bullet marks of any kind were found any where on the inside of the house. The defense testimony was to the effect that neither appellant nor his brother had pistols at the time they went into the Brown house, but that the pistols were in the possession of the inmates thereof. The officers reached the scene of the homicide in a few minutes after it occurred and found no pistols in or about the house.

We have thought it unnecessary to detail the evidence of the various witnesses separately but have undertaken to state substantially a summary of all of it both from the standpoint of the State and appellant.

No bills of exception appear in the record to the rejection or admission of any testimony. A number of special charges were requested two of which were given; those refused bear no notation that an exception was reserved to the failure to give them, and no bills. of exception appear bringing forward such refusal for review. Where appropriate the principles were included in the general charge. The sole exception incorporates the objections filed to the court's charge. It will be observed from the fact developed upon the trial that many issues were raised and the court's charge seems to have covered all of them. The main charge and the two special charges given by request appear to have guarded appellant's rights upon every issue in the case. The charge embraced not only murder but the law of manslaughter and self-defense, covering in an admirable way the some what confused issues growing out of the evidence. We have been unable to discover any merit in the exceptions to the charge, although we have examined the same carefully in view of the heavy penalty inflicted.

The State's case, if its evidence is to be believed, reveals a condition of affairs in which appellant seems to have directed his malice not only at Dick Gamble but at all the inmates of the house; that he and his brother were actnig together, had armed themselves and had gone there with the express purpose of making a deadly assault upon the inmates, and that in carrying this purpose out Turner Gamble met his death. We have been unable to reach any other conclusion than that appellant received a fair trial, with a charge not subject to the criticisms and objections lodged against it, and that the penalty inflicted is a merited one.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

ON REHEARING.

June 20, 1923.

HAWKINS, JUDGE.—In our original opinion we stated that no bills of exception were in the record complaining at the reception or rejection of testimony. In this we were in error. No brief was on file for appellant, but in his motion for rehearing our attention is called to the trial judge's approval of the statement of facts which also contains a specific approval of the "bills of exception reserved therein." This is such an unusual procedure that we failed to observe the language of the court's approval until our attention was called to it in the motion. It appears well settled that exceptions to evidence *admitted* over objection of defendant may be embraced in the state-

ment of facts, and that such exceptions will be considered under certain limitations and restrictions. (See Branch's Ann. P. C., page 138, Section 214 for collation of authorities.)

Appellant complains in one bill at certain testimony elicited by the State from the witness George Whitefield. The witness was an undertaker and prepared the body of deceased for burial. He testified that there were five bullet holes in the body of deceased entering from the left side; one entered just below the left nipple and one two or three inches below the left arm pit and a third which entered on the left side of the stomach; that a fourth bullet pierced the left thigh and a fifth one pierced the leg about the knee on the left side. After having described the wounds he testified "that in his opinion a man shot in the body like the deceased was shot would be able to walk after being so shot from the back yard up the kitchen steps through the kitchen and into the middle room of his own strength after receiving such wounds, notwithstanding he was of the age of deceased and old and decrepit."

This opinion testimony was objected to on the ground that the witness had not shown himself to be an expert nor qualified to give such an opinion. The evidence further shows that witness was not a practicing physician and had never studied medicine or surgery and was only acquainted with the art of embalming as a practical science. Such testimony was inadmissible, the witness not having shown himself an expert upon the subject about which he was interrogated, and the evidence should have been excluded. It remains then to ascertain whether the error committed by the learned trial judge in admitting such evidence demands a reversal at the hands of this court. Evidence was introduced of the firing of many shots both in the house and in the yard and some witnesses testified that as many as two shots were fired in the house after appellant and his brother had left the premises. Appellant himself testified that as he and deceased were struggling in the back yard deceased had a pistol which was fired several times. He disclaims knowledge as to whether any of these shots struck deceased or not, but claims that Will Brown, one of the inmates of the house, fired at them from the back door while they were struggling in the yard, and that from the weakening of deceased at the time he was sure one of these shots struck him. The issue was not whether deceased was able to walk into the house from the back yard after receiving the wounds, and in our judgment the testimony of Whitefield had little probative force. Appellant himself testified that after he had succeeded in getting loose from deceased while they were struggling in the back yard "and that as he ran on out and away Turner Gamble (deceased) went on back into the house."

So it appears from the testimony of appellant himself that deceased did return into the house without assistance, and we have been

95 T. C.—3.

unable to discover under the circumstances in what way the inadmissible statement of Whitefield should be held to be reversibly injurious. Among other defensive charges presented was one instructing the jury that:

"—if you believe from the evidence some person or persons fired the shots at the time and place of the homicide which killed deceased, Turner Gamble, but you believe that said shots were fired by some persons other than Lonnie Reeves or his brother Walter Reeves, then in that event you will acquit this defendant; and if you have a reasonable doubt as to whether such other parties fired the shots which caused the death of deceased then you will give defendant the benefit of such reasonable doubt and acquit him."

The foregoing charge unquestionably authorized the jury to acquit appellant if any party other than his brother or himself fired the shots that resulted in deceased's death, regardless of where the shots may have been fired from, or whether they were fired before deceased left the house, while he was in the yard or after he returned to the house. Under the peculiar facts of the instant case we are constrained to hold that we would not be justified in reversing the judgment because of the objectionable testimony from the witness Whitefield.

While Bessie Brown, a witness for the State, was testifying she was shown a photograph and testified that it was a correct picture of the premises about the place where the homicide occurred; that it was taken on Wednesday following the shooting on Sunday. Appellant "objected to the exhibition of said picture to the jury because it was not shown by the testimony that said premises were the same as they were at the time of the difficulty and that the conditions were not the same; that on the day the picture was taken it was raining, and that the condition had generally changed and that the picture was not shown to have been taken under the same circumstances which existed at the time of the killing."

Whether a bill of exception appears in the statement of facts or in the record as an independent bill the rule is that the objection stated will not be regarded as a certificate of the trial judge that the ground existed upon which the objection is based. (For authorities see Section 209, page 134, Branch's Ann. P. C.). There is nothing in this bill which enables us to pass upon the correctness or otherwise of the objections urged, and we will not feel bound to examine the entire statement of facts to determine whether they afterwards developed. (See Branch's Ann. P. C., Section 214, page 52, and authorities there collated.)

The State's counsel asked appellant's witness Alex Robinson if he had not at one time been convicted of robbery in Dallas County. Objection was interposed because the records of the court were the best evidence. The inquiry was not for the purpose of disqualifying

the witness, but only as affecting his credibility. It was not necessary to produce the judgment of conviction. Further objection was urged that the conviction inquired about was too remote. The conviction inquired about occurred in 1914, and the punishment assessed was five years in the penitentiary. After serving two or three years he was pardoned. The present case was tried in 1922. If he only served two years of this sentence he would have been at liberty something like six years when the inquiry was made. It is shown that since the pardon he had not been charged with any character of crime. The question was discussed at some length in Vick v. State, 71 Tex. Crim. Rep., 50 and many cases reviewed. As stated by Judge Davidson in the Vick case, no iron bound rule as to the date of conviction can be laid down. This was illustrated in Oats v. State, 67 Tex. Crim. Rep., 488, 49 S. W. Rep., 1194. That it should not be the solely controlling issue can readily be seen in an instance where conviction may have occurred many years before, and the wtiness have remained in the penitentiary under that conviction up to within a short time of the trial. We are not inclined to hold that the conviction inquired about was too remote. The same principle was discussed in Bibb v. State, 86 Tex. Cr. Rep., 112, 215 S. W. Rep., 312.

Appellant also complains because he was not permitted to ask a State's witness if he had not in 1910 been indicted in seven cases charging him with passing forged checks, and if the indictments were not dismissed in 1912. It is not necessary to pass upon the action of the court in sustaining the State's objection for the reason that the proof as to the indictments went into the record. Counsel had the original indictments in his hand which he presented to witness while making the inquiry. On re-direct examination the State proved by the witness that the indictments were dismissed in 1912, and was asked if counsel now representing appellant but then being assistant district attorney did not have them dismissed. He did not know who dismissed them. So it may be seen that appellant got the benefit, if any there was, in putting the jury in possession of the facts regarding the indictments against said witness. We discover no injury which could have resulted to appellant from asking if his attorney had not dismissed the prosecutions. Even if he had, there is not the slightest intimation that he acted otherwise than in good faith in the matter.

We have examined all other bills of exception incorporated in the statement of facts and none in our opinion present any error calling for a reversal of the judgment. The other matters relative to complaints at the charge of the court were considered upon the former submission.

The motion for rehearing is overruled.

*Overruled.*